[Cite as *In re J.R.P.*, 2013-Ohio-5595.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   100046

# IN RE: J.R.P.
# A Minor Child

## JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 12121141

**BEFORE:**   E.A. Gallagher, J., Boyle, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   December 19, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
By:   Sheryl A. Trzaska
Assistant Public Defender
250 East Broad Street
Suite 1400
Columbus, OH   43215

**ATTORNEYS FOR APPELLEES**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Lakesha M. Johnson
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario
Cleveland, OH   44113

EILEEN A. GALLAGHER, J.:

{¶1} J.P. appeals the decision of the Cuyahoga County Common Pleas Court, Juvenile Division, adjudicating him delinquent of two counts of aggravated robbery with one- and three-year firearm specifications. J.P. argues that the state presented insufficient evidence concerning his identity and the court's verdict was against the manifest weight of the evidence. Finding no merit to the instant case, we affirm the decision of the trial court.

{¶2} In December 2012, 13-year old J.N. and his 15-year-old brother D.N. were walking home from the A&D Snack Shack on North Taylor Road in Cleveland Heights when J.P. and an unknown accomplice approached. Neither J.N. or D.N. had ever before seen J.P. or the unknown accomplice. D.N. testified that J.P. said to him, "you hit my brother, we have to work." J.P. also asked D.N. where he was from but D.N. did not answer. D.N. testified that when he did not answer, J.P. turned to his accomplice and said, "get the gun out" and told D.N. that if either he or J.N. ran away, he was going to shoot them. J.N. testified that he saw an impression and a black handle of a gun in the accomplice's left front pants pocket.

{¶3} D.N. testified that J.P. went in his pocket and took his cell phone and then went in his brother's pocket and took his cell phone as well as the food and money left over from the store. J.P. started to walk away but his accomplice told him to return D.N. and J.N.'s cell phones. J.P. eventually handed the phones to his accomplice who gave

them back to D.N. and J.N.

{¶4} The victims contacted Cleveland Heights police officers who responded to North Taylor Road where they spoke with the two victims. The victims explained that two, teenage, black males confronted them during daytime hours while they were walking home from the A&D Snack Shack. The victims provided the officers with a description of the two males and also provided the officer with the name of a female friend of theirs who may have known the two suspects. The officers asked the victims if they would be able to identify the suspects and both indicated that they could.

{¶5} Officer Matthew Lasker went to the female witness's house on Helmsdale Road to speak with her about the incident. Officer Lasker testified that the witness made statements that she knew the first name of the suspects involved in the robbery and reported the two names. Officer Lasker relayed the names to the other investigating officers, who used the information to create a photo array. Approximately ten days after the incident, Cleveland Heights officers administered a photo array to D.N. and J.N. D.N. testified that he identified the assailant from the photo array with 100 percent certainty. J.N. testified that the photos in the array were not the best photos and therefore, he was not able to identify either suspect from the array. However, J.N. testified that he told the administering officer that if he saw the suspects in person, he would be able to identify both. During trial, both D.N. and J.N. identified J.P. as the individual that robbed them on North Taylor Road in December 2012.

{¶6} Based on the facts outlined above, a complaint was filed in Cuyahoga

County's Juvenile Court alleging that then 15-year old J.P. was a delinquent child for two counts of aggravated robbery with one-and three-year firearm specifications. During trial, the state presented the testimony of the two juvenile victims, as well as the testimony of officers Gregory Jakomin, Zachary Penhollow and Lasker from the Cleveland Heights Police Department. After trial, the court found J.P. delinquent of the charges and firearm specifications as alleged. The court then committed J.P. to the Department of Youth Services for a minimum period of one year, maximum of his 21st birthday for each charge of aggravated robbery to run concurrent and, for a consecutive, mandatory period of one year for the corresponding firearm specifications, which the court merged prior to sentencing.

{¶7} J.P. appeals, raising the following assignment of error:

The juvenile court erred when it adjudicated J.P. delinquent of aggravated robbery and the corresponding firearm specifications, when there was insufficient evidence to prove his identity, and the verdict was against the manifest weight of the evidence.

{¶8} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Simmons*, 8th Dist. Cuyahoga No. 96925, 2012-Ohio-592. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d

492 (1991), paragraph two of the syllabus. A verdict will not be disturbed based upon insufficient evidence unless it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 2001-Ohio-4, 739 N.E.2d 749; *Jenks* at 273.

{¶9} The manifest weight of the evidence standard of review requires an appellate court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Simmons*; *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 387.

{¶10} As it relates to J.P.'s sufficiency argument, J.P. does not attack the state's burden of production on any individual element of the crimes for which he was adjudicated delinquent, rather he argues that the state presented insufficient evidence regarding his identity as the individual who robbed both D.N. and J.N. and threatened the use of a firearm. In support of his argument, J.P. claims that his adjudication resulted solely from D.N.'s in-court identification of him and further, that identification was unreliable because it was made by a 15-year-old and took place six months after the

incident.[1]   We find no merit to J.P.'s argument.

{¶11}   The factors to be considered to determine an identification's reliability

[i]nclude the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

{¶12}   In the present case, the state presented the testimony of D.N., who stated that during the daylight hours, J.P. approached him and his brother and threatened them both with a handgun.   D.N. testified that J.P. went through both his and his brother's pockets stealing cell phones, food and money, although he eventually returned the cell phones.   Ten days after the incident, D.N. positively identified the person who robbed him in December and, during an in-court identification, re-affirmed that identification, testifying that the person he picked out of the photo lineup and the person he saw in court that day was J.P.   D.N.'s in-court identification of J.P. as the individual who robbed him occurred six months after the incident and D.N. testified with confidence that J.P. was the assailant.   Further, the robbery occurred during daylight hours, D.N. had ample time to view J.P during the robbery and he consistently identified J.P. as the individual who committed the aggravated robbery.

{¶13}   Viewing the evidence in the light most favorable to the state, we find that

---

[1] J.P. does not argue or raise issue with J.N.'s identification testimony.   Accordingly, we shall limit our analysis to the parameters raised by J.P.

the state presented sufficient evidence that J.P. was the individual who committed the aggravated robbery in December 2012.

**{¶14}** Lastly, we have reviewed the entire record and conclude that the verdict is supported by the manifest weight of the evidence. Although J.P. argues extensively about the unreliability of eyewitness testimony, the credibility and the weight to be given to a witness' testimony is a matter for the trier of fact to resolve. We do not find that the trier of fact lost its way simply because it found the testimony of D.N. to be credible.

**{¶15}** J.P.'s sole assignment of error is overruled.

**{¶16}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
MARY EILEEN KILBANE, J., CONCUR